GOSHORN, Judge.
This appeal concerns two interdependent real estate contracts entered into by Lex *1378 ington Development Corporation (Lexington) as buyer; one contract with PABC Florida Associates, General Partner of South Conway, Ltd. (Conway) and the other with Fletcher Land Corporation (Fletcher), as sellers. The first issue on appeal concerns the construction of a provision in the Lexington-Conway agreement. Because we find the relevant contract provision ambiguous, requiring a factual determination, we reverse the summary judgment entered by the trial court.
In pertinent part the Lexington-Conway agreement provided:
8. Seller’s Deliveries
Seller shall deliver to the Buyer at the closing the following' documents dated as of or prior to the closing date.
* * * * * *
(c) Assignments. An assignment or assignments of all plans, permits, and approvals obtained by Seller, if any, for development of the Property, which items shall be available for review by Buyer without additional fees. Seller shall also assign the sewage treatment capacity and water service capacity which was obtained by Seller for development of property. [Emphasis added].
Conway and Fletcher contend that this language refers to sewage treatment capacity reserved under the terms of a reservation agreement between themselves. Supporting affidavits were provided by Boyd C. Steed, Jr. and Gerald Braley. Mr. Steed, who dealt with Lexington on behalf of Conway, stated that Conway’s only obligation under the agreement was to assign Conway’s reservation rights to Lexington. Mr. Braley, former president of Lexington, stated that he was the only person on behalf of Lexington to deal with Conway and Fletcher during the negotiation and execution of the agreements, and that he alone had personal knowledge as to Lexington’s intent in connection with the agreements. According to Mr. Braley, the language in paragraph 8(c) referred only to the sewage capacity promised by Fletcher to Conway for development of the Conway parcel.
Lexington, on the other hand, contends that paragraph 8(c) is unambiguous on its face, requiring Conway to deliver to Lexington on line sewage treatment capacity at closing. Because the evidence is unre-futed that no on line sewage capacity existed on the Conway property at closing, Lexington argues Conway breached the agreement, thus entitling Lexington to the return of its earnest money deposits and a judgment for its attorney fees and costs.[1] We reject this contention. A thorough reading of both contracts convinces us that the contract provision itself, is ambiguous. Whether merely an assignment of the reservation or actual on line capacity was required is unclear. Such ambiguity necessitates a review of extrinsic evidence of the parties’ intentions. Friedman v. Virginia Metal Products Corp., 56 So.2d 515 (Fla.1952); Smith v. Manatee County, 56 So.2d 453 (Fla.1952). Because that evidence is in genuine dispute, the summary final judgment in favor of Lexington is reversed. Fla.R.Civ.P. 1.510.
Fletcher next urges a partial summary judgment limiting the amount Fletcher could recover should it prevail on its claim for breach of contract against Lexington was improperly entered. We agree and reverse. The agreement between Lexington and Fletcher set forth a liquidated damages clause providing:

Default.

Buyer. If this transaction does not close due to a refusal or default on the part of the Buyer, then any deposits placed under this Agreement, plus accrued interest, shall be delivered by the Escrow Agent to the Seller as liquidated and agreed upon damages; and thereafter, the Buyer shall be relieved from all further obligations or liabilities arising under this Agreement.
*1379 As a part of its contractual obligation under the agreement, Lexington paid an initial deposit of $25,000 to the escrow agent. Lexington was also required to deposit an additional $50,000 prior to closing. Pursuant to this obligation Lexington delivered its personal check for $50,000 to the escrow agent[2] on October 30, 1986. That same day, the escrow agent advised Fletcher:
This letter will confirm that we are in receipt of the additional deposit from Lexington Development, as Buyer, in the amount of $50,000.00, which will be held in escrow pursuant to the terms of the Contract.
Apparently, this check was never presented for payment and on November 5, 1986 the escrow agent advised Fletcher that payment had been stopped on the check.
Lexington filed its motion for summary judgment arguing that, as a matter of law, even if successful in its breach of contract suit against Lexington, Fletcher should only be entitled to recover as liquidated damages the $25,000 earnest money deposit held by the escrow agent. Recovery of the additional $50,000 would be improper, Lexington contended, because this additional sum was not a deposit “actually made.” The trial court agreed and entered partial summary judgment, citing Freitag v. Lakes of Carriage Hills, Inc., 467 So.2d 708 (Fla. 4th DCA 1985); Makris v. Williams, 426 So.2d 1186 (Fla. 4th DCA 1983); Stewart v. Mehrlust, 409 So.2d 1085 (Fla. 2d DCA 1982); Campbell v. Salman, 384 So.2d 1331 (Fla. 3d DCA 1980); and Brown v. Fine, 102 So.2d 830 (Fla. 3d DCA 1958). These cases adhere to the general rule that when there is a liquidated damage claim in a contract limiting the seller’s damages to retaining the deposit, a seller cannot recover a deposit not actually made if the sale fails to close due to the default of the buyer. Although we do not take issue with this general principle, we find that the facts of this ease are governed by Alvis v. Investment I, Inc., 504 So.2d 508 (Fla. 2d DCA 1987) and Makris v. Williams, supra. Alvis and Makris turn on the finding that deposits are actually made where there is a representation that such deposit has in fact been made. Likewise, in the case at bar, Fletcher was entitled to rely upon the representation of Lexington’s attorney, acting as escrow agent, that the deposit had been paid into escrow.
REVERSED and REMANDED.
DANIEL, C.J., and COWART, J., concur.

. It is undisputed that Lexington was not obligated to close under either the Fletcher or Conway agreements if for any reason Fletcher defaulted on the Fletcher agreement or Conway defaulted on the Conway agreement.

. The escrow agent was also acting as Lexington's attorney.